UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

FILED
United States Court of Appeals
Tenth Circuit

**April 24, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

SANTIAGO TOJ-RIZ,

    Petitioner,

v.

PAMELA J. BONDI,
United States Attorney General,[*]

    Respondent.

No. 24-9533
(Petition for Review)

_____

ORDER AND JUDGMENT[**]
_____

Before **MATHESON**, **BACHARACH**, and **CARSON**, Circuit Judges.
_____

Mr. Santiago Toj-Riz is an indigenous Guatemalan who faced

removal proceedings because he had entered the United States without

permission. To avoid removal, Mr. Toj-Riz sought asylum, withholding of

---

[*]    The Attorney General is the proper respondent, and the Attorney General is now Ms. Pamela J. Bondi. So we substitute her as the respondent. *See* Fed. R. App. P. 43(c)(2).

[**]    The parties don't request oral argument, and it would not help us decide the appeal. So we have decided the appeal based on the record and the parties' briefs. *See* Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G).

This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

removal, and deferral of removal, claiming a fear of persecution or torture if he returned to Guatemala. The immigration judge denied relief, and the Board of Immigration Appeals dismissed the appeal. Mr. Toj-Riz seeks judicial review.

**Challenges to the Immigration Judge's Decision**

We review the Board's decision rather than the immigration judge's. *Diallo v. Gonzales*, 447 F.3d 1274, 1279 (10th Cir. 2006). To ascertain the Board's reasoning, we can consider what the immigration judge said. *Id.*

But Mr. Toj-Riz frames all of his challenges around the immigration judge's decision rather than the Board's. This framing is misguided because the decision being reviewed is the Board's rather than the immigration judge's. *See Iyamba v. INS*, 244 F.3d 606, 607 (8th Cir. 2001) (per curiam) (concluding that a challenge to the immigration judge's decision is "misdirected" because the court of appeals reviews the Board's decision rather than the immigration judge's). But even if we were to reframe Mr. Toj-Riz's challenges, they would fail.

**Past Persecution**

Mr. Toj-Riz sought asylum[1] and withholding of removal. For either form of relief, Mr. Toj-Riz needed to show an objectively reasonable fear

---

[1] In the body of his brief, Mr. Toj-Riz challenges the immigration judge's decision on asylum. In the heading for his first proposition, however, Mr. Toj-Riz addresses withholding of removal and the availability of relief under the Convention Against Torture, but doesn't

of future persecution. *Tulengkey v. Gonzales*, 425 F.3d 1277, 1281 (10th Cir. 2005). That fear is rebuttably presumed when a noncitizen suffered persecution before entering the United States. *Escobar-Hernandez v. Barr*, 940 F.3d 1358, 1361 (10th Cir. 2019).

Mr. Toj-Riz stated under oath that he had encountered persecution in Guatemala, referring to physical altercations, harassment, and threats. The immigration judge concluded that the altercations, harassment, and threats didn't amount to *persecution*. For this conclusion, the immigration judge stated that Mr. Toj-Riz hadn't suffered "physical harm." R. at 54.

From this statement, Mr. Toj-Riz argues that the agency failed to consider any of the psychological suffering. We disagree. The immigration judge didn't just refer to physical harm; he also found that

- the threats didn't involve "imminent harm" and

- the incidents of harassment hadn't been frequent, severe, or pervasive.

*Id.*[2] So even if we were to disregard Mr. Toj-Riz's focus on the findings by the immigration judge rather than the Board, we have no reason to think that the agency disregarded the allegations of psychological suffering.

_____

mention asylum. Petitioner's Opening Br. at 6. We nonetheless consider his arguments to encompass asylum because it's discussed in the body of his brief.

[2]    In his brief, Mr. Toj-Riz insists that he suffered discrimination, intimidation, threats, mocking, and physical harm. Petitioner's Opening Br. at 7. Conceivably, he could argue that evidence of these incidents could

**Nexus**

For asylum or withholding of removal, a noncitizen must show not only an objectively reasonable fear of persecution, but also a nexus to a protected ground. *Miguel-Pena v. Garland*,94 F.4th 1145, 1159 (10th Cir. 2024). For a protected ground, Mr. Toj-Riz relied on his race as an indigenous Guatemalan. But the immigration judge found that Mr. Toj-Riz had not shown a nexus between his treatment and his race.

Despite that finding, the immigration judge generally assessed Mr. Toj-Riz as credible. The Board didn't discuss this assessment, but Mr. Toj-Riz relies on it, arguing that the immigration judge must have credited the testimony linking Mr. Toj-Riz's mistreatment to his race. But a favorable credibility finding doesn't mean that the immigration judge credited every word of the testimony. *See Garland v. Ming Dai*, 593 U.S. 357, 372 (2021) ("It's not always the case that credibility equals factual accuracy . . . ."). An immigration judge could reasonably reject the existence of a nexus while believing that the noncitizen sincerely believed that he had been targeted because of his race. *See Lopez-Benitez v. Garland*, 91 F.4th 763, 768–70 (4th Cir. 2024) (concluding that the Board of Immigration Appeals could reasonably reject a nexus even though the petitioner had attributed the mistreatment to a family connection and the immigration judge found

---

have compelled a finding of past persecution. But he doesn't make that argument.

4

the petitioner credible). So the immigration judge's favorable assessment of credibility doesn't undermine the agency's rejection of finding a nexus between Mr. Toj-Riz's mistreatment and his race.[3]

**Ability to Relocate**

The immigration judge also found that Mr. Toj-Riz could have relocated in Guatemala to avoid persecution. Mr. Toj-Riz challenges this finding. But the Board of Immigration Appeals didn't rely on this finding, and we review the Board's decision rather than the immigration judge's. *See Diallo*, 447 F.3d at 1279; *see also* p. 2, above. So we have no need to address Mr. Toj-Riz's argument involving his inability to avoid persecution by relocating in Guatemala.

**Torture**

A noncitizen can obtain an order withholding or deferring removal when it would likely result in torture. 8 C.F.R. §§ 1208.16, 1208.17. Alleging such a likelihood, Mr. Toj-Riz sought withholding or deferral of removal.

The immigration judge denied relief, reasoning that (1) removal wouldn't likely result in torture and (2) the Guatemalan government had

---

[3]    Mr. Toj-Riz surmises that the agency must have relied on his failure to report incidents of abuse and argues that credible testimony can suffice without evidence of police reports. Petitioner's Opening Br. at 10. But the agency didn't say that it was relying on the lack of police reports or question the ability of a noncitizen to rely on testimony of past abuse.

taken measures to protect indigenous individuals. The Board of Immigration Appeals upheld this finding based solely on the failure to show a likelihood of torture if Mr. Toj-Riz were returned to Guatemala.

But Mr. Toj-Riz argues that the immigration judge erred in finding protective measures to protect indigenous Guatemalans. This argument wouldn't help Mr. Toj-Riz because the Board declined to address this issue, relying instead on the failure to show a likelihood of torture upon return to Guatemala. Because Mr. Toj-Riz doesn't address the Board's reliance on his failure to show a likelihood of torture, he couldn't prevail here even if we agreed with his challenge to the immigration judge's reasoning.

**Denial of Equal Protection**

Mr. Toj-Riz also argues that he is being treated unequally with other noncitizens facing similar circumstances "during a more sympathetic administration." Petitioner's Opening Br. at 14. Based on this argument, he argues that prosecutors have exercised their discretion with greater leniency toward other similarly situated noncitizens. *Id.*

We lack jurisdiction to address this argument. Federal law expressly prohibits jurisdiction to consider the government's decision-making on whether to begin removal proceedings and how to litigate them. 8 U.S.C. § 1252(g); *see Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999) ("Section 1252(g) was directed against . . .

6

attempts to impose judicial constraints upon prosecutorial discretion."). As a result, we lack jurisdiction to consider Mr. Toj-Riz's theory involving a denial of equal protection. *See Duron v. Johnson*, 898 F.3d 644, 647 (5th Cir. 2018) (concluding that § 1252(g) generally bars review of noncitizens' claims of selective enforcement); *Butt ex rel. Q.T.R. v. Barr*, 954 F.3d 901, 908–09 (6th Cir. 2020) (concluding that the court of appeals lacked jurisdiction under 8 U.S.C. § 1252(g) to review a claim of selective enforcement).[4]

Petition dismissed in part and denied in remaining part.

Entered for the Court


Robert E. Bacharach
Circuit Judge

---

[4] Even if we would otherwise have had jurisdiction, we couldn't grant relief because Mr. Toj-Riz failed to exhaust this theory in the administrative proceedings. *See* 8 U.S.C. § 1252(d)(1) (requiring exhaustion). Though exhaustion isn't jurisdictional, it is mandatory because it's a claim-processing requirement that the government has invoked. *See Fort Bend Cnty. v. Davis*, 587 U.S. 541, 549 (2019).